979 So.2d 1216 (2008)
TWELFTH AVENUE INVESTMENTS, INC., a Florida corporation, Appellant,
v.
Chris SMITH, Appellee.
Nos. 4D06-4820, 4D07-2198.
District Court of Appeal of Florida, Fourth District.
April 30, 2008.
Jeffrey S. Badgley of Anderson & Badgley, P.L., Winter Park, for appellant.
Nancy Little Hoffmann of Nancy Little Hoffmann, P.A., and William S. Cross of Doumar, Allsworth, Cross, et al., Fort Lauderdale, for appellee.
SHAHOOD, C.J.
This appeal involves a dispute over the exercise of a purchase option in a lease agreement for a commercial property. The lessee of the commercial property, Christopher M. Smith, sued the lessor, Twelfth Avenue Investments, Inc. ("Twelfth"), and its representative, Margaret A. York, for specific performance of the purchase option. In response, the lessor *1218 sued Smith to regain possession of the property. The cases were consolidated below and final judgment was entered in favor of Smith. We affirm.
On October 7, 2005, Smith sent notice by letter to York indicating his election to execute his option to purchase the property under lease pursuant to Article IV of the lease agreement, offering $1,500,000. The offer was rejected and a counteroffer of $3,800,000 was made. Smith sent a reply the next day, rejecting the counteroffer and providing notice that he wished to proceed to a three-member board appraisal pursuant to Article IV. York replied with names of appraisers she would agree to.
On January 3, 2006, York, through her attorney, notified Smith that he had no right to exercise the option to purchase and was required to vacate the premises by January 14, 2006. Nine days later, Smith filed an action for specific performance against York requiring the parties to complete the appraisal process to reach a purchase price. Later, in an Amended Complaint for Specific Performance, Twelfth was added as a defendant. In response, Twelfth filed a complaint against Smith, to regain possession of the property (count I); to force Smith to pay his past due rent and to pay additional holdover rent as a holdover tenant at sufferance (count II); and to declare Twelfth's rights under the lease with regard to Smith's attempt to enforce one portion of the lease while being in default of other parts of the lease (count III).
After the cases were consolidated, a non-jury trial was conducted. Smith testified that he acquired a truss business on August 29, 2002, from Howard Brennan and assumed a February 20, 1998, lease on the property. Smith paid the lease payments to York. For the remainder of 2002, Smith assumed the $4 million insurance policy previously on the property and thereafter maintained the same policy amount even though the lease required insurance for $5 million. The first time Twelfth advised Smith that the insurance amount was inadequate was on January 4, 2006. The next day Smith tried to obtain a $5 million insurance policy but was unsuccessful because the insurance company would not write more than a $4 million policy. Smith indicated that he paid the taxes on the property between November and March 31, annually. Smith received a notification from York that he had not paid the taxes for 2005 in January, but Smith claims to have paid the 2005 taxes in January or February.
York, the president, sole shareholder, and sole officer of Twelfth, testified that she had a conversation with Smith in the spring of 2005 concerning the possibility of a lease extension in which she advised him that she wanted to obtain an appraisal of the property. She went to the property on October 18 and discovered some deficiencies on the property but did not inform Smith of them. When she made her counteroffer on November 10, she was aware that the property only had $4 million worth of insurance coverage. York acknowledged that the first written notification Smith received of any alleged defaults is in a letter dated January 3, 2006. Up until January 3, she was moving forward in compliance with the provisions of Article IV, by obtaining appraisers and exchanging appraisals. She acknowledged that the lease allowed Smith to exercise his option to purchase at any time during the term of the lease. York claims that Smith was in default with the lease on October 7, 2005.
Final judgment was entered, finding that Smith was entitled to specific performance of Article IV of the lease; that the parties were directed to comply with the valuation procedure to determine a *1219 purchase price for the property as of January 3, 2006; granting Twelfth's count for rent and holdover rent; and denying Twelfth's count for possession of the property.
The first issue is whether the trial court abused its discretion in granting specific performance to enforce Article IV of the lease agreement.
The lease was set to expire on January 14, 2006 and Smith invoked Article IV on October 7, 2005. Article IV, entitled "OPTION TO PURCHASE," provides in part:
The Lessee shall have the option to purchase the above described real property at any time during the term of this lease by serving written notice of its election to so purchase upon the Lessor. The purchase price to be paid by the Lessee thereupon shall be such as agreed upon by the parties. . . . In the event the parties fail to reach an agreement as to purchase price within thirty (30) days from the service of the above notice, a board of three (3) appraisers shall be appointed as follows:
One (1) member by Lessor; one (1) member by Lessee; the third member selected by the first two members of said board. The board of appraisers thereupon shall proceed to appraise the premises and determine the fair market value thereof as the purchase price to be paid, and each of the parties shall be bound by the findings of the board. If the Lessee is not satisfied by the findings of the board, at its election it may withdraw its option exercise. Lessee shall bear the expense for the cost of its own and Lessors [sic] appraisal fees.
Twelfth responded by letter offering to sell the property for $3.8 million. Smith rejected the offer and submitted a name for the appraisal process. The parties continued to exchange correspondence regarding the appraisals until Smith received letters disavowing his right to exercise the option, that he was in default of the lease, and that he must vacate the property.
Where there is an option to purchase, the lessee's act of noticing the lessor of the lessee's decision to purchase the property is all that is required to exercise that option. Doolittle v. Fruehauf Corp., 332 So.2d 107, 109 (Fla. 1st DCA 1976). Once notice is given, "the option became a bilateral contract, binding on both parties, and susceptible of enforcement by a court of equity in a suit for specific performance." Id.
Twelfth argues that Smith had breached the contract and therefore could not enforce the option to purchase. However, the alleged breaches were disputed at trial. Where there are conflicting facts, "it is the function of the trial court to resolve such factual disputes, and the trial court's determination should be upheld absent an abuse of discretion." Evans v. State, 800 So.2d 182, 188 (Fla.2001). We find that the lower court had competent substantial evidence to enforce Smith's right to purchase.
The second issue is whether the trial court abused its discretion in denying Twelfth's complaint for possession.
Article VI, paragraph N, of the lease provides that at the end of the lease, the lessee must turn over the property to the lessor:
The Lessee covenants and agrees to deliver up and surrender to the Lessor the possession of the demised premises upon the expiration of this lease, or its termination, as herein provided, in as good condition and repair as the same shall be at the commencement of said term. . . . No tenancy of any duration shall be created by a holding over beyond the end of the term.
*1220 However, once Smith notified Twelfth of his desire to purchase the property pursuant to the procedure agreed to by the parties in Article IV of the lease, the lease ended and the parties were then bound by the terms within the option to purchase. As a result, Twelfth may seek possession of the property only through an action for ejectment, not eviction. See Pensacola Wine & Spirits Distillers, Inc. v. Gator Distribs., Inc., 448 So.2d 34 (Fla. 1st DCA 1984). The trial court correctly denied Twelfth's complaint for possession based on the remedy of eviction.
Based on the above, by invoking the right to purchase, the parties entered into a contract of sale, terminating the lease and Smith thereby became an equitable owner of the property. As an equitable owner, Smith can be dispossessed only by a proceeding in ejectment, not eviction as was originally sought by Twelfth.
Finally, Twelfth argues that the lower court erred in including York as a defendant in its final judgment.
In Smith's initial complaint for specific performance, he listed only York as the named defendant. York then filed an Answer and Affirmative Defenses, explaining that she is not the present lessor of the property; rather it is Twelfth which owns the real property. Smith subsequently filed an Amended Complaint for Specific Performance to include Twelfth as a defendant along with York.
At trial, Smith testified that he believed York to be the landlord of the property and his rent checks were made out to her. York testified that Twelfth owns the property that is the subject matter of this action. Twelfth originally obtained title to the property on May 29, 1992, and all rent collected on the property went to Twelfth.
In the trial court's amended final judgment, it neither determined whether York was a proper party nor specifically entered any relief against York.
After final judgment was entered, Twelfth and York filed a rule 1.540(a) motion for relief from judgment, seeking to remove York from the final judgment as a "clerical mistake" on the part of the court. The trial court denied this motion. This ruling was not appealed. At the hearing on the motion the trial court asked if York's counsel ever moved to remove her from the pleadings:
THE COURT: Let me interrupt you.
I can't recall, did Mrs. York's counsel move to strike her from the pleadings or move to dismiss?
[TWELFTH AND YORK'S ATTORNEY]: I don't believe so, Your Honor.
Even though Twelfth was a named party in the Amended Final Judgment, there was no action taken by Twelfth to remove York as a party prior to the judgment. Furthermore, the Amended Final Judgment did not specifically rule against York on any issue; rather, it placed all liability on Twelfth. Therefore, to remove York from the judgment would be of no consequence.
In a separate issue, Twelfth argues that the lower court abused its discretion in finding Smith was the prevailing party for attorney's fees. Twelfth has conceded that this issue is not ripe for review. See Carres v. Good-Earnest, 838 So.2d 577 (Fla. 4th DCA 2002) (an order determining the entitlement to attorney's fees without setting the amount is not ripe for review until the amount of fees is determined).
Affirmed.
TAYLOR, J., and LEVIN, STEVEN J., Associate Judge, concur.