DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

POPS FAMILY ENTERTAINMENT CENTER, LTD.,

Appellant/Cross-Appellee,

v.

THOMAS F. KELLY; KELLY COMMERCIAL PROPERTY, LLC; and
HIGHVIEW HOMES, LLC,

Appellees/Cross-Appellants.

No. 2D21-17

_____

September 16, 2022

Appeal from the Circuit Court for Sarasota County; Andrea
McHugh, Judge.

Tracy Raffles Gunn of Gunn Appellate Practice, P.A., Tampa, for
Appellant/Cross-Appellee.

Morgan R. Bentley, David A. Wallace, and Amanda R. Kison of
Bentley Goodrich Kison, P.A., Sarasota, for Appellee/Cross-
Appellant Thomas F. Kelly.

No appearance for remaining Appellees/Cross-Appellants.

STARGEL, Judge.

Pops Family Entertainment Center, Ltd., successor by merger to Pops Golf Range, Inc. (Pops), leased a thirty-acre parcel of land in 2000 from Thomas Kelly, who later transferred the lease to Kelly Commercial Property, Inc. (Kelly). The lease had a fifty-year term and contained a right of first refusal should the landlord intend to dispose of the "whole or any part" of the premises during the lease term. In 2009, the parties entered a lease amendment to terminate the lease on May 31, 2019, a reduction of over thirty years with a buyout agreement for Kelly to pay Pops $200,000 immediately and $150,000 upon termination of the lease.

Pops subsequently exercised its right of first refusal on a fifteen-acre parcel by executing a purchase agreement in May 2017, after commencement of this action, but continued to make the lease payments on the entire property until the end of the amended lease term on May 31, 2019. Pops then delivered the keys to Kelly in conformity with the requirements of the amended lease. Kelly subsequently refused to pay the remaining $150,000 of the buyout agreement. After a nonjury trial, the trial court entered judgment on numerous counts in favor of Pops but denied Pops' claim for the final payment due under the buyout agreement. We affirm the final

2

judgment entered by the trial court in all respects without further discussion except as to count I(B)[1] and count II, both of which relate to the remaining payment Pops claims is due for a reduction of the lease term. Because the trial court erroneously held that the lease ceased to exist "when Pops signed the purchase agreement, because the Lease merged into the contract to purchase," we must reverse on those counts.

## I.

While our analysis could be limited to the facts set forth above, it is beneficial to further explain the details of the relationship leading to this litigation. The relationship between the parties deteriorated significantly after the 2009 amendment was executed. As property values continued to increase in the Fruitville Road area of Sarasota where the property is located, Kelly was determined to capitalize on the increased value. Kelly attempted to pursue a default on the lease without disclosing a pending purchase agreement.

---

[1] Count I of the operative complaint essentially raised three separate claims for declaratory relief, which the trial court subdivided into counts I(A), I(B), and I(C). Counts I(A) and I(C) are not pertinent to Pops' appellate argument.

In June 2015, Kelly entered into a contract to sell approximately half of the leased parcel to Highview Homes, Inc., for over $2.4 million (the Highview Agreement). Kelly failed to timely disclose the Highview Agreement to Pops despite several meetings in which Kelly attempted to buy out the remainder of the lease. During this time, Kelly and Highview executed several amendments to their agreement to extend the timeframes while Kelly attempted to terminate the lease with Pops. When Pops eventually learned of the Highview Agreement, Kelly withheld amendments and other material information from Pops which was necessary for Pops to determine if it would exercise its right of first refusal.

In March 2016, Pops filed an action for declaratory relief against Kelly, claiming that Kelly's notice was insufficient to trigger the right of first refusal. After suit was filed, Kelly continued to withhold information, even excluding two amendments when submitting the Highview Agreement to the trial court as an attachment to an affidavit in support of summary judgment. Thomas Kelly specifically attested that "[t]here are no other terms or conditions of my agreement with buyer other than those explicitly set forth in the [Highview Agreement]." Once the amendments were

4

eventually made available to Pops through discovery, Pops exercised its right of first refusal and entered into a purchase agreement with Kelly for the fifteen-acre parcel. Pops later amended its complaint to add claims for declaratory relief and breach of agreement based upon Kelly's refusal to pay the remaining $150,000 due under the lease addendum.[2]

## II.

On count I(B) for declaratory relief and count II for breach of agreement, the trial court ruled that Pops' exercise of the right of first refusal extinguished as a matter of law the 2009 lease amendment that required Kelly to pay Pops $150,000 upon the expiration of the lease term in 2019. The sole rationale for eliminating Pops' right to this payment was a misinterpretation of the doctrine of merger as it applies to these agreements. While the trial court recognized that the purchase agreement only covered

---

[2] After Pops exercised its right of first refusal and entered into the purchase agreement with Kelly, Highview sued Pops and Kelly for specific performance, anticipatory breach of contract, and declaratory relief. The Highview case and this case were consolidated, and the trial court eventually entered summary judgment in favor of Pops on the Highview claims. The remaining claims by and against Highview were settled and dismissed.

5

half of the leased property, it reasoned that Pops could have chosen not to exercise the right of first refusal and remain a tenant but instead exercised its right of first refusal resulting in a vendor-vendee relationship with Kelly.[3]  Therefore, the trial court ruled that the lease had terminated, and Kelly was no longer legally obligated to pay Pops the $150,000.

### III.

Pops argues on appeal that the trial court erroneously concluded that Kelly's obligation to pay $150,000 upon the termination of the lease was extinguished as a matter of law when

---

[3] As an initial matter, we note that the trial court's suggestion that Pops had to make a choice between either exercising its right of first refusal resulting in a terminated lease or remaining a tenant on the property but forgoing the right of first refusal has no basis in the law or under the agreements at issue here.  The trial court's suggestion could leave Pops, or others in a similar position, with no meaningful way to get the benefit of their bargain.  If this analysis were allowed to stand, a landlord could offer to sell a small fraction of a larger property to a third party and the tenant with a right of first refusal would be forced to either continue with their existing lease on the whole property or exercise their right of first refusal. Under the trial court's analysis, the tenant who exercised the option on the small parcel would enter a vendor and vendee relationship and the remainder of the lease would terminate—and with it the right of first refusal on the remaining property.

Pops exercised its right of first refusal.[4]  Because this issue requires the interpretation of various contractual provisions, our review is de novo.  *See Muniz v. Crystal Lake Project, LLC*, 947 So. 2d 464, 469 (Fla. 3d DCA 2006) ("The interpretation of a contract involves a pure question of law for which [the appellate court] applies a *de novo* standard of review.").

In determining whether Pops' exercise of its right of first refusal merged the purchase agreement and the lease, we must begin with the intent of the parties.  In *Harkless v. Laubhan*, 219 So. 3d 900, 905 (Fla. 2d DCA 2016), this court explained that merger applies only if that is what the parties intended:

> The doctrine of merger by deed . . . is an extension of the general principle of integration in written contracts. Whether discussing merger into a deed or integration of a prior agreement into a subsequent contract, our guiding principle is the intent of the parties.  *See Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 53 (Fla. 1st DCA 2005) ("The concept of integration is based on a presumption that the parties to a written contract intended that writing 'to be the sole expositor of their agreement.' " (quoting *Everglade Lumber Co. v. Nettleton Lumber Co.*, 149 So. 736, 738 (1933))).  If it is undisputed that none of the parties to a real estate transaction intended for certain provisions of their real estate sales contract to

---

[4] We reject the arguments raised in Kelly's cross-appeal without further discussion.

7

merge into a subsequent deed, then no merger takes place as to those provisions.

The facts before us here do not support a finding of merger because the leasehold estate and fee estate were never unified since there was no acquisition of the leasehold estate and, even if there had been, the purchase agreement only encompassed approximately half of the leased premises. *See generally Lassiter v. Kaufman*, 581 So. 2d 147, 148 n.1 (Fla. 1991) (defining merger as "the process whereby a greater estate (fee simple) and a lesser estate (leasehold), without an intermediate estate, coincide and meet in one person thereby extinguishing the lesser estate into the greater" (citing *Black's Law Dictionary* 892 (5th ed. 1979))). Thus, Pops would still be due consideration under the lease amendment for terminating over thirty years of the lease on the fifteen acres not subject to the purchase agreement.

Nor is there any evidence in this case that the parties intended the contracts to merge upon Pops' exercise of the right of first refusal. When faced with a similar issue, the Third District in *Contos v. Lipsky*, 433 So. 2d 1242 (Fla. 3d DCA 1983), recognized that

8

the once inflexible common law rule—that is, that whenever a greater estate and a lesser estate coincide in the same person without any intermediate estate, the lesser estate merges into the greater—has given way to the rule that equity will prevent or permit a merger as will best serve the purpose of justice and the actual and just intent of the parties, whether express or implied.

*Id.* at 1244. In addressing the lessee's exercise of the right of first refusal, the court in *Contos* stated, "In the absence of evidence showing an express or implied intent, we must presume that the lessee (the party acquiring both estates) intended the result most beneficial to her, that is, no merger." *Id.* at 1245. Here, to determine whether the parties intended for Pops' exercise of its right of first refusal to extinguish Kelly's obligation to pay the final $150,000 payment, we need only look to three provisions in the agreements between the parties: the right of first refusal in the lease, the buyout language in the lease addendum, and the description of the property subject to the purchase agreement.

First, the right of first refusal in the lease made it clear that there was a right of first refusal for any proposed third-party purchaser. Paragraph 27 of the lease provides:

As part of the consideration under this Lease, Tenant at all times shall have the following right of first refusal. Landlord shall not, during any Term or Renewal Term,

> sell, lease grant options in respect of, or otherwise dispose of **the whole or any part of** the Premises, without giving Tenant a thirty (30) day right of first refusal within which to purchase, lease, or otherwise acquire the Premises of the Land, on the same terms and conditions as those on which the Landlord is willing to make such sale, lease or other disposition to any other third party, . . .

(Emphasis added.) Significantly, as the plain language of this provision makes clear, the parties recognized that the right of first refusal could be for less than the total thirty-acre parcel. Further, if the parties intended the exercise of the right of first refusal on any portion of the lease to terminate the remainder of the lease, they could have said so in their agreement.

Likewise, in 2009, when Kelly sought to reduce the term of the lease, the parties agreed to a buyout provision through a lease amendment. The parties agreed to a lease amendment reducing the remaining term to ten years and changing the expiration of the lease from February 28, 2050, to May 31, 2019. To obtain Pops' agreement to this substantial reduction of the lease term, Kelly agreed to pay Pops the sum of $350,000, payable in two installments:

> 3. In consideration of Tenant agreeing to change the term of the Lease Agreement, Landlord shall pay to Tenant the

10

sum of $200,000 at the time of the execution of this Amendment; and further shall pay Tenant the sum of $150,000 on or before May 31, 2019.

If the parties had intended the exercise of the right of first refusal over a portion of the property to result in termination of the lease or elimination of the final payment, the lease addendum would likely have included such provisions.

The final document we must consider in determining the intent of the parties is the purchase agreement pursuant to the right of first refusal. Kelly and Pops executed the purchase agreement for the same tract of land consisting of approximately fifteen acres. The purchase agreement specifically references "the Seller's current lease on the property" but is void of any indication that the parties intended to terminate the lease. While the purchase agreement contains a contingency for approval by government agencies for development of a residential multifamily apartment project and includes a feasibility and investigation study period which allows extended time periods for environmental and other approvals that foreseeably would extend beyond the remaining term of the lease, it lacks any specific reference to the termination of the buyout in the lease addendum as Kelly argues.

The only language in the purchase agreement that could arguably address prior agreements between the parties is an integration clause which states:

> 9.5 INTEGRATION. This Contract contains all of the terms agreed upon between the parties with respect to the subject matter hereof, and is the complete, final, exclusive and entire understanding between Buyer and Seller with respect to the purchase and sale of the Property, and supersedes all previous contracts, agreements and understandings of the parties, either oral or written, relating to the Property.

This language, however, specifically limits any integration to "the subject matter hereof" which is the purchase and sale of the property, not the lease agreement. In short, there is simply no indication within the purchase agreement of any intent to terminate the lease.

The intent of the parties as shown through their actions lends further support to this conclusion. After executing the purchase agreement, Pops continued to occupy and pay rent for the entire thirty-acre parcel. Indeed, nothing changed between the parties as to the leasehold obligations once the purchase agreement was executed except that due diligence commenced for an eventual purchase of the property. The fact that all aspects of the parties'

12

landlord-tenant relationship continued after entering into the purchase agreement suggests that it was not their intent to terminate the lease and the future payments.

IV.

In concluding that the lease agreement was extinguished as a matter of law, the trial court relied upon statements made by the Third District in *Keys Lobster, Inc. v. Ocean Divers, Inc.*, 468 So. 2d 360 (Fla. 3d DCA 1985), which involved a claim for attorney's fees arising from a dispute over a lessee's attempt to exercise a right of first refusal. The court in *Keys Lobster* stated that "[u]pon exercise of [the lessee's] option, the lease and all its incidents ceased to exist" and that "the right of first refusal had merged into the contract to purchase." *Id.* at 364 (first citing *Foxworth v. Maddox*, 137 So. 161 (Fla. 1931), and then citing *Skipper v. Handley*, 121 So. 792 (Fla. 1929)). While these statements appear at first blush to support Kelly's position, the *Keys Lobster* court did not hold that the entirety of a lease ipso facto merges into the purchase contract when a lessee exercises a right of first refusal. The relevant portion of *Keys Lobster* held that because the right of first refusal had ripened into an option to purchase prior to suit, the lessee's claim

13

for specific performance necessarily arose out of the purchase contract, which supported the lessor's claim for attorney's fees as to that claim. *Id.* Therefore, despite the language cited by the trial court, we do not find *Keys Lobster* controlling in a situation where, as here, the pertinent cause of action is not based upon the right of first refusal provision but rather an entirely different provision such as the buyout clause in the lease addendum.

Furthermore, in support of its argument that Pops and Kelly's relationship changed from that of landlord-tenant to that of vendor-vendee as the result of Pops' decision to exercise the right of first refusal, thereby terminating the lease, Kelly cites *Twelfth Avenue Investments, Inc. v. Smith*, 979 So. 2d 1216 (Fla. 4th DCA 2008), in which the Fourth District stated that "once [the lessee] notified [the lessor] of his desire to purchase the property pursuant to the procedure agreed to by the parties in . . . the lease, the lease ended and the parties were then bound by the terms within the option to purchase." *Id.* at 1220 (citing *Pensacola Wine & Spirits Distillers, Inc. v. Gator Distribs., Inc.*, 448 So. 2d 34, 35 (Fla. 1st DCA 1984)).

However, unlike in *Twelfth Avenue Investments*, the parties in this case continued to operate as they had under the lease following Pops' exercise of its right of first refusal. In fact, Pops continued to pay rent and paid the taxes and insurance on the property as required by the lease for two years after exercising its option. Additionally, the purchase agreement expressly references the "existing lease" and applies to only half of the leased premises. There were also numerous provisions of the purchase agreement that would have permitted Pops to terminate the purchase agreement, but neither the terms of the purchase agreement nor the actions of the parties indicated that either party would have then been excused from their obligations under the remaining lease terms.

V.

We conclude in the instant case that the lease agreement did not merge into a purchase agreement upon Pops' exercise of its right of first refusal such that it extinguished all provisions of and amendments to the lease. Kelly's promise to pay $150,000 to Pops on or before May 31, 2019, although arising from an amendment to the lease agreement, is not excused as a matter of law simply

15

because Pops chose to exercise its right of first refusal on fifteen of the thirty acres described in the lease agreement.

Accordingly, because the trial court erred in concluding that the provisions of the lease amendment relating to the final $150,000 payment were extinguished upon Pops' decision to execute its right of first refusal, we reverse the final judgment as to counts I(B) and II only, affirm the remainder of the final judgment, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

KHOUZAM, J., Concurs specially with opinion.
ROTHSTEIN-YOUAKIM, J., Concurs.

KHOUZAM, Judge, Concurring specially.

I agree fully with the result reached by the majority; I write separately to explain my reasoning.

As the majority has correctly delineated, the doctrine of merger does not apply under the circumstances of this case. None of the relevant documents reflect an intent to terminate the lease upon the

16

purchase of only part of the property, and none of the authorities relied upon by the parties or the trial court establish otherwise. Further, as the majority correctly observes, the parties' conduct of continuing their landlord-tenant relationship was entirely consistent with this interpretation. Therefore, reversal on this basis is appropriate.

_____

Opinion subject to revision prior to official publication.

17